IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISB DEVELOPMENT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 3643 |
| v. | ) | |
| | ) | |
| EDWARD M. KOPKO and FREDERICK H. KOPKO, JR., | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff ISB Development Corporation ("ISB" or "Plaintiff") brings an action against Defendants Edward Kopko and Frederick Kopko (collectively "the Kopkos" or "Defendants") for breach of contract and a declaratory judgment on Defendants' obligation to authorize a loan repayment. Before the Court is Defendants' motion to dismiss. For the reasons stated below, the motion is DENIED.

### I.     Background

ISB alleges the following facts. The Kopkos were President and Chief Executive Officer of Butler International, Inc. ("Butler") until March 2009. In 2006, Butler required additional capital to fund its operations. In November of 2006, ISB and the Kopkos formed a partnership by the name of SFE Partners ("the Partnership") for the purpose of providing capital to Butler.

ISB loaned $4,000,000 to the Partnership for the purchase of 4,000 shares of Series A Preferred Stock in Butler, in addition to warrants to purchase 1,000,000 shares of Butler common

stock. The terms of the ISB loan were memorialized in a Partnership Agreement and a promissory note, both executed in Illinois and attached as exhibits to the complaint. Under both documents, ISB is entitled to demand repayment of the loan on 60 days notice at any time after September 30, 2008.

The Partnership has made three payments on the ISB loan, for a total of $288,438.36. Pursuant to the express terms of the promissory note, this sum was applied to accrued and unpaid interest. On October 1, 2008, ISB sent the Kopkos written notice demanding full repayment of the loan within 60 days. The Kopkos did not take any action in response to the demand letter. ISB followed up with two written notices of default, which went unanswered. Currently, ISB is owed $4,000,000 in principal plus interest, which continues to accrue at a rate of 10% per annum.

## II. Standard of Review

A complaint's factual allegations must suggest a plausible, rather than merely speculative, entitlement to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). When ruling on a motion to dismiss, the court generally considers only the well-pleaded allegations of a complaint, construed in the light most favorable to the plaintiff. *Tamayo*, 526 F.3d at 1081. However, contracts attached as exhibits may also be considered when ruling on a motion to dismiss. *See INEOS Polymers, Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009); *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); Fed. R. Civ. P. 10(c). Where the terms of an attached contract conflict with the plaintiff's allegations,

the contract controls. *See Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002) ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.") (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 529 (7th Cir. 1999) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.") (internal citations omitted).

### III. Analysis

ISB sues the Kopkos individually for breach of the Partnership Agreement and a declaratory judgment affirming Defendants' obligation to authorize repayment of the loan. ISB prays for the following relief: (i) a finding that the Kopkos breached the Agreement, causing damages equal to the Partnership's indebted amount (allegedly $4,532,602.74); (ii) an order directing the Kopkos to sell the preferred shares and warrants or make capital contributions to the Partnership for repayment of the loan and its accrued interest, and (iii) a declaration that the Kopkos have a duty to cause the Partnership to repay the outstanding balance on the ISB loan.

#### A. Indispensable Party

At issue is whether the Partnership, whose joinder would destroy diversity jurisdiction, is an indispensable party to this lawsuit. An unincorporated association is considered a citizen of every state where any of its partners or members is a citizen. *See Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (citing *Carden v. Arkoma Associates*, 494 U.S. 185 (1990)).

For the purposes of diversity, the Partnership shares identity of citizenship with ISB and the Kopkos. Its inclusion would compel the Court to dismiss this case for lack of jurisdiction.

### 1. Personal Liability

According to the Partnership Agreement and the promissory note, ISB made a loan to the Partnership, not Defendants. The outstanding loan obligation thus belongs to the Partnership. ISB nevertheless argues that the Partnership is not an indispensable party to this lawsuit because the Kopkos are personally liable for the loan. For this proposition, ISB relies on the following provision in the Partnership Agreement ("Repayment Provision"):

> <u>Repayment of Principal on ISB Loan</u>. ISB may demand repayment of the ISB Loan on 60 days notice at any time after September 30, 2008. Upon such demand, E. Kopko and F. Kopko shall be responsible to make such repayment by selling the Preferred Shares and Warrants and/or making additional capital contributions to the Partnership.

ISB contends that, under the only permissible reading of this language, the above clause represents a personal guarantee on the part of the Kopkos for the ISB loan.

Plaintiff's interpretation is counterintuitive. Because the loan was made to the Partnership to acquire the preferred shares and warrants, the Partnership owns the securities, not the Kopkos. Moreover, making additional capital contributions allows the Partnership to repay the loan. Thus, this provision establishes that the Partnership, not the Kopkos, is liable for repayment.

Defendants claim that the Repayment Provision was merely intended to facilitate the liquidation of Partnership securities, eliminating the need for a vote on the matter if the Kopkos decided that a sale was required to pay off the loan. Taken in light of the Agreement as a whole, the Repayment Provision more likely acts as an override in the event of a voting stalemate. The Agreement provides that the Kopkos each have one vote and ISB has two. Should a stalemate

arise, the Kopkos "shall propose to buy ISB out of the Partnership. Upon receiving such proposal ISB shall choose either to accept the proposal or to acquire all assets of the Partnership and to dissolve the Partnership." If, however, the partners disagree on the critical issue of whether the Partnership should pay off its debt to ISB, the Repayment Provision effectively binds the Kopkos to vote their shares to repay the loan. Meanwhile, the final phrase of the Repayment Provision seems to indicate that, if the Kopkos are unwilling to sell the Partnership securities, they should substitute additional capital contributions to the Partnership to make good on the loan.

Either way, contrary to ISB's assertions, the Repayment Provision does not establish personal liability on the part of the Kopkos for the Partnership's outstanding debt.

### 2. Fed. R. Civ. P. Rule 19

ISB alternatively argues that the Partnership is not an indispensable party because it does not meet the criteria of Federal Rule of Civil Procedure 19. Rule 19(a) guides courts in ascertaining whether an absent party should be joined "if feasible," that is, where such action will not destroy jurisdiction. There is no doubt that the Partnership should be joined if feasible. Disposition of the instant lawsuit requires findings on obligations triggered by a demand for repayment of the Partnership's debt. Any judgment impacts the Partnership's ability to satisfy its loan obligation and therefore favors its joinder. *See* Fed. R. Civ. P. 19(a) (requiring joinder if a party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest . . . .").

However, Rule 19(a) is inapplicable where, as here, joinder of the absent party would deprive the Court of diversity jurisdiction. *Krueger v. Cartwright*, 996 F.2d 928, 932 (7th Cir. 1993). In such situations, the Court must look to Rule 19(b). *See id.* Subsection (b) asks whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Rule 19(b) lists four factors to be considered:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The determination should be made "in the light of pragmatic considerations," rather than strict adherence to legal formalism. Fed. R. Civ. P. 19, Advisory Committee Notes to the 1966 Amendments.

Taking these concerns to heart, a number of courts allow lawsuits to proceed without the partnership so long as all partners are parties to the case, on the rationale that the partnership is not prejudiced because its constituent partners adequately represent its interests. *See Hooper v. Wolf*, 396 F.3d 744, 750 (5th Cir. 2005) (in a suit among partners enforcing profit arrangement and alleging diversion of assets, district court abused its discretion in holding that partnership was a necessary party; partnership was not prejudiced because it was represented by all partners); *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1193 (3rd Cir. 1996) (in suit seeking declaratory judgment that defendant breached partnership agreement, district court abused its discretion in finding partnership indispensable; all partners were before the court, and a partnership's interests are an aggregate of those of its individual partners); *Delta Fin. Corp. v. Paul D. Comanduras &*

*Assocs.*, 973 F.2d 301, 303-04 (4th Cir. 1992) (district court properly found that partnership was not indispensable in action to compel dissolution, because partnership had no interests apart from those of the parties, and partnership's absence did not incur risk of multiple, inconsistent obligations); *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 90-91 (2d Cir. 1990), *cert. denied*, 499 U.S. 955 (1991) (in derivative action for looting of limited partnership, partnership was not indispensable because all partners were parties to the action and protective provisions in judgment could resolve remaining difficulties).

Although the Seventh Circuit has yet to directly address the matter, its interpretation of Rule 19(b) is consistent with the rationale of the Second, Third, Fourth, and Fifth Circuits on the issue. Notably, the Seventh Circuit encourages practical solutions to compulsory joinder problems threatening diversity. *See Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 635 (7th Cir. 2009) ("Rule 19(b) spells out factors for the court to consider . . . with an emphasis on practical measures that will allow either the entire suit or part of it to go forward."). It also agrees that, "[w]ith adequate representation in the action, potential prejudice is greatly reduced. Thus if there is an identity of interest between the absent beneficiary and one already a party to the action, dismissal is ordinarily avoided." *Hansen v. Peoples Bank of Bloomington,* 594 F.2d 1149, 1153 (7th Cir. 1979). Finally, the Seventh Circuit has acknowledged that federal courts are reluctant to dismiss on Rule 19, when doing so deprives the plaintiff of his choice of federal forum. *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). It bears noting that other courts in this district likewise err on the side of pragmatism. *Weirich v. Wehrli*, 2007 WL 899132, *3 (N.D. Ill. Mar. 20, 2007) (partnership not indispensable in an action seeking dissolution; its interests were adequately represented by the parties in the case, and protective provisions in judgment

could prevent any possible prejudice); *VMS/PCA Ltd. Partnership v. PCA Partners Ltd. Partnership*, 727 F.Supp. 1167, 1170 (N.D. Ill. 1989) (finding no prejudice to absent joint venture in suit alleging fraud, racketeering, and breach of fiduciary duty; both joint venturers were present, joint venture had no interests separate from its members, and adequate relief could be shaped to protect all parties' interests).[1]

When applied to the instant case, Rule 19(b) factors favor the nonjoinder of the Partnership. The first and second factors contemplate how the Partnership might be prejudiced by a judgment in its absence, and whether the Court can lessen or avoid such prejudice by protective provisions in the judgment or by shaping relief accordingly. This case certainly has major implications for the Partnership. Still, being affected by a judgment does not necessarily mean that a party is prejudiced by nonjoinder. When assessing prejudice, courts must consider whether the absent party's interests are adequately represented by those already a party to the litigation. *See Hansen,* 594 F.2d at 1153.

The Partnership's three partners are all parties to this lawsuit, indicating adequate representation of the Partnership's interests. *See Pekin Ins. Co. v. The Estate of Goben*, 707 N.E.2d 1259, 1264 (Ill. App. Ct. 1999) (partnership is not a separate and distinct legal entity for most purposes; it may be sued in its own name but has no legal existence outside of its partners). Defendants argue that the Partnership possesses claims and defenses against ISB, apart from Defendants' own, such that prejudice would result from nonjoinder. Specifically, the Partnership could claim that ISB never supplied the full amount of the loan, or that the Partnership had already satisfied its payment obligations. The Court sees no reason why the

---

[1] Not all federal district courts rule consistently; decisions should be made in light of the specific facts of each case. *See Vulcan Power Co. v. Davenport Power, LLC*, 2007 WL 1667152, at *5 (D. Or. June 4, 2007) (holding that partnership must be joined in an action to abate proceedings to which the partnership is already a party); *Camden Securities Co. v. Lupowitz*, 500 F.Supp. 653, 655 (E.D. Pa. 1980) (partnership was indispensable because, in its absence, court could not ascertain the amount of defendant's financial obligation to the partnership or the amount plaintiffs were entitled to receive from the partnership).

Kopkos cannot advance these claims themselves, when defending against allegations that they breached the Agreement or are obliged to authorize further loan payments.

More worrisome is the possibility that ISB may later file a separate suit against the Partnership for payment of the loan (producing a potential third-party complaint against the Kopkos for failure to facilitate repayment), or file a derivative action against the Kopkos based on the same claim, giving rise to multiple or inconsistent obligations. However, the Court can avoid such prejudice by issuing an order preventing Plaintiff from filing such actions in the future. *See HB Gen. Corp.,* 95 F.3d at 1195-96.

The third factor of Rule 19(b) also weighs in favor of nonjoinder. Judgment can be shaped to afford complete relief to the parties without the participation of the Partnership. If ISB prevails, the Court can find that the Kopkos have breached the Partnership Agreement and declare that they have an obligation to comply with the Repayment Provision. Although requested by ISB, a specific finding of money damages will not be necessary.

As to the fourth factor, ISB does have an adequate remedy in Illinois state courts if the Court dismisses this suit. However, seeing as this is the only point favoring dismissal, it is outweighed by other considerations. *See Extra Equipamentos E Exportacao LTDA. v. Case Corp.*, 361 F.3d 359, 361 (7th Cir. 2004) (courts must make a fact-sensitive assessment, giving no particular weight to each factor); Fed. R. Civ. P. 19, Advisory Committee Notes to the 1966 Amendments ("The factors are to a certain extent overlapping, and they are not intended to exclude other considerations which may be applicable in particular situations."). In sum, the Partnership need not be joined under Rule 19(b). The participation of all partners minimizes prejudice against the Partnership, and the Court may shape its judgment and relief to eliminate remaining problems.

## B. Accounting Requirement

In the alternative, Defendants contend that the Court must dismiss this case because the parties have not yet conducted a final settlement of the Partnership account. In Illinois, when a full review of a partnership account is necessary to determine the extent to which a partner is liable to another for wrongdoing, the injured partner may not sue her co-partner until such accounting has been undertaken. *See Balcor Income Properties v. Arlen Realty,* 420 N.E.2d 612, 613 (1981); *Schlossberg v. Corrington,* 400 N.E.2d 73, 80 (1980).[2]

The Kopkos urge the court to follow *Schlossberg v. Corrington*, in which the plaintiff sued to recover money that a co-partner owed as capital contributions to the partnership. 400 N.E.2d at 77. The court found that the plaintiff could not bring this suit without an accounting. *Id.* ("[A] dispute of this nature ordinarily involves the taking of a partnership account, for, until that is taken, it cannot be known that plaintiff is not liable to refund even more than he claims in the particular suit.") (internal citation omitted). *Schlossberg* is distinguishable from the instant case because the amount of the Partnership's debt to ISB can be readily ascertained without a full accounting.

The Kopkos argue that an accounting is required to determine if any capital contributions they make, whether in the form of cash, property, or services, are sufficient to satisfy the Partnership's loan obligation. This matter is not before the Court. If Plaintiff should prevail, the Court need only find the Kopkos in breach of the Agreement and order their compliance with the Repayment Provision. If the Kopkos prefer to hold on to the Partnership's securities and make capital contributions to the Partnership account instead, the

---

[2] The contracts at issue lack a choice of law provision, but both parties appear to concede that the agreements are governed by Illinois law.

adequacy of those contributions can then be debated amongst the parties. At worst, the sufficiency of future potential capital contributions is the subject of another lawsuit.

### C. Indefinite and Unenforceable Terms

Defendants also move to dismiss on the grounds that the Repayment Provision's reference to additional capital contributions is indefinite and unenforceable due to its lack of specificity and detail. Under Illinois law, a contract is unenforceable for indefiniteness when it leaves out (1) a crucial term that (2) a court cannot reasonably be asked to supply in the name of interpretation. *Haslund v. Simon Property Group, Inc.*, 378 F.3d 653, 655 (7th Cir. 2004)(citing *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. Sup. Ct. 1991)). A contract term is crucial if, in its absence, "there is no basis for deciding whether the agreement has been kept or broken . . . ." *Cheever*, 578 N.E.2d at 984; *see, e.g.*, *Goldstick v. ICM Realty*, 788 F.2d 456, 451 (7th Cir. 1986) (contract price, period over which price would be paid, interest rate, and repayment profile were essential terms); *Champaign National Bank v. Landers Seed Co.*, 519 N.E.2d 957, 959-60 (Ill. Sup. Ct. 1988) (duration of the loan and mode or rate of repayment were essential terms to a refinancing agreement).

The Kopkos point out that the Agreement is silent on how, when, why, and in what amount capital contributions should be made. Likening their obligation to a capital call, Defendants also take issue with the Agreement's failure specify the consideration to be received in return for additional capital contributions, whether in terms of an enhanced partnership interest or share of profits. The Agreement is silent on how to arrange an advance to the Partnership, should Defendants choose to make capital contributions in the form of future services, or whether the Partnership will assume liability for funds borrowed

by Defendants for a capital contribution. Defendants claim that the terms of the capital contribution were omitted on the understanding that they would be negotiated when a need to make such contributions arose, to complement each partner's plans at that time.

Firstly, the concurrent execution of the loan and the Partnership Agreement implies that the Agreement's allocation of consideration already accounts for each partner's obligations. The contract's silence on the issue of additional consideration for capital contributions indicates that none was contemplated by the parties. Secondly, the omissions identified by Defendants are not so crucial to the Agreement that, without them, the Court lacks a basis for deciding whether the alleged breach occurred. *See Cheever*, 578 N.E.2d at 984. Insofar as the Repayment Provision pertains to the limited dispute and inaction alleged by ISB, it remains valid and enforceable. *See id.* The legal meaning of the Provision, and whether its language is ambiguous, are questions to be taken up at a later stage. *See Ahsan v. Eagle, Inc.*, 678 N.E.2d 1238, 1241 (Ill. App. Ct. 1997) (holding that Illinois courts consider parole evidence provisionally to determine if an agreement that appears to be clear on its face is actually ambiguous).

### D. Damages

Finally, Defendants argue that ISB cannot maintain an action for breach of contract because it cannot plead or prove damages. ISB demands that the Kopkos either vote their shares to sell Partnership securities or make additional capital contributions in compliance with the Repayment Provision. Defendants assert that any capital contributions they make would become a liability of the Partnership, payable upon dissolution. Defendants further contend that, under the Illinois Uniform Partnership Act, all partners' accounts are

chargeable with a share of the losses of co-partners who contributed capital, in proportion to each partner's right to profit. 805 ILCS 206/401(b). Because ISB is entitled to 90% of the net proceeds of the sale of Partnership warrants or common stock within a certain price range, the Kopkos posit that, upon dissolution, ISB would be responsible to contribute 90% of any capital losses incurred by the Kopkos in satisfaction of the ISB loan. Defendants conclude that, as a result, ISB can prove no damages arising from the Kopko's alleged failure to make additional capital contributions.

Even if the Court were to accept Defendants' proposed chain of future events, their alleged breach exposes ISB to any number of injuries capable of supporting a plausible claim for relief. Defendants' hypothetical does not change the fact that the Complaint alleges damages equal to the Partnership's indebted amount, and cannot be dismissed on the ground that it fails to do so.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **July 1, 2010**